THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America | No. 3:02-cr-00499-CMC |
| v. | |
| Noah Sumter | **OPINION and ORDER** |
| Defendant. | |

## I. Introduction.

On September 23, 2020, acting *pro se*, Noah Sumter ("Sumter") filed the instant motion on form AO 243—Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person In Federal Custody (Rev. 01/15). ECF No. 85. In his motion and accompanying memoranda, Sumter challenges as invalid under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), his guilty plea and conviction on one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). ECF Nos. 85, 85-1. In *Rehaif*, the Supreme Court held in order to sustain a conviction under §§ 922(g) and 924(a)(2), "the Government must prove both that the defendant possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. The Government responded on November 19, 2020, ECF No. 96, and Sumter replied on December 21, 2020, ECF No. 99. This matter is ripe for resolution.

Before launching into the procedural history and the parties' arguments, the court believes it helpful to first set forth the text of the relevant statute and some particulars of *Rehaif*.

## II. Sections 922(g)(1) and 924(a)(2)

In relevant part, § 924(a)(2) provides: "Whoever knowingly violates subsection [(g)] of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2). Always beginning with the word "who," subsection (g) of § 922 in turn has nine subsections listing nine different statuses making it "unlawful" for a person "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." *Id.* § 922(g). Among the nine statuses listed in § 922(g) are "any person": (1) "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," *id.* § 922(g)(1); (2) "who has been adjudicated as a mental defective or has been committed to a mental institution," *id.* § 922(g)(4); or (3) "who, being an alien—(A) is illegally or unlawfully in the United States," *id.* § 922(g)(5).

## III. *Rehaif*

In *Rehaif*, a jury convicted the petitioner-defendant ("Rehaif") of being an alien unlawfully in the United States in possession of firearms, in violation of §§ 922(g)(5) and 924(a)(2). 139 S. Ct. at 2194. At trial, Rehaif objected to the district court's jury instruction "that the 'United States is not required to prove' that Rehaif 'knew that he was illegally or unlawfully in the United States,'" at the time he possessed the firearms as alleged in the indictment. *Id.* The district court overruled the objection, the jury convicted Rehaif, and the district court sentenced him to 18 months imprisonment. *Id.* Rehaif appealed, challenging the instruction, but the Eleventh Circuit affirmed. *Id.* at 2195. The Supreme Court granted *certiorari*. *Id.*

The *Rehaif* Court posed the question to be answered in the case as follows: "Does [the word 'knowingly' in § 924(a)(2)] mean that the Government must prove that a defendant knew

2

both that he engaged in the relevant conduct (that he possessed a firearm) and also that he fell within the relevant status (that he was a felon, an alien unlawfully in this country, or the like)?" *Id.* at 2194. In the immediately following sentence, the Court answered the question by holding "the word 'knowingly' applies both to the defendant's conduct and to the defendant's status. To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id.* In its conclusion, the *Rehaif* Court restated its holding as follows: "[I]n a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the Defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2220. Citing *United States v. Langley*, 62 F.3d 602 (4th Cir. 1995) (*en banc*), the Fourth Circuit first recognized in *United States v. Lockhart*, "[t]he [Supreme] Court's holding in *Rehaif* abrogated the prior precedent of this Circuit, which did not require proof of a defendant's knowledge that he belonged to the relevant category," 947 F.3d 187, 196 (4th Cir. 2020).

## IV. Relevant Procedural History

Turning now to the relevant procedural history, on May 7, 2002, a federal grand jury issued a one-count indictment ("the Indictment"), charging Sumter as follows with being a felon in possession of a firearm:

> On or about February 10, 2002, in the District of South Carolina, **NOAH SUMTER**, having been convicted of a crime punishable by impr[i]sonment for a term exceeding one year, knowingly did possess in and affecting commerce, a firearm, that is, a Ruger, Mini-14, .223 caliber semi-automatic rifle, which had been shipped and transported in interstate commerce;

> In violation of Title 18, United States Code, Sections 922(g)(1), 924(a).

ECF No. 1.

3

Having previously consented to proceed before a United States Magistrate Judge with respect to entry of a guilty plea, on November 7, 2002, Sumter pleaded guilty to Count 1, pursuant to a plea agreement he had entered into with the Government.[1]  ECF Nos. 27, 31, 32, 94.  Notably, during the plea colloquy, when the Magistrate Judge advised Sumter of the elements the Government would be required to prove if he went to trial instead of pleading guilty, the Magistrate Judge followed then current law and did not inform him knowledge he had been convicted of a crime punishable by imprisonment exceeding one year at the time he possessed the firearm at issue was an element of the offense.  *See Langley*, 62 F.3d at 604–08 (holding defendant's knowledge of his felony status is not essential element of offense under §§ 922(g)(1) and 924(a)(2)), *abrogated by Rehaif*, 139 S. Ct. at 2194.

Later in the plea colloquy, the Government gave the following recitation of facts it would be able to show if Sumter had elected to go to trial:

> [O]n February 10, 2002, . . . Deputy Wheaten . . . of the Richland County Sheriff's Department was on patrol in the Shop Road area of Richland County.  He observed Mr. Sumter driving his Cadillac, a 1994 Cadillac, which he knew to belong to Mr. Sumter. . . . Deputy Wheaten was familiar with Mr. Sumter.  He actually lived in the same apartment complex as Mr. Sumter and also had stopped Mr. Sumter on other occasions.  So when he saw him driving, he knew that his license was under suspension.
>
> He initiated a traffic stop.  There was a short car chase.  Mr. Sumter did not stop immediately.  When he finally stopped there on Aster Circle and Aster Street,

---

[1] The Plea Agreement contained language whereby Sumter waived his rights to pursue an appeal or file a motion under 28 U.S.C. § 2255 with limited exceptions.  ECF Nos. 27 at 6–7, 94 at 16–18.  The Government does not argue this waiver applies or seek to enforce it in any way.  Therefore, this court will not address the matter further.  *See United States v. Jones*, 667 F.3d 477, 486 (4th Cir. 2012) (declining to enforce *sua sponte* an appeal waiver in a plea agreement because the Government did not seek to enforce it).

Deputy Wheaten found Mr. Sumter to be the driver and found two other individuals in the car with him.  He placed Mr. Sumter under arrest for driving under suspension.  He conducted a search, incident to arrest, an inventory search of the Cadillac because the Cadillac was going to have to be towed as Mr. Sumter was arrested.  He found two handguns under the front passenger seat that were loaded [in] the vehicle.  And then he found the semi-automatic rifle, the Ruger, in the trunk.

All three individuals at the scene were advised of their rights.  Mr. Sumter made a – all denied possession of handguns.  And Mr. Sumter denied possession of the handguns but admitted to the officer that the rifle in the trunk was his.  And I'll put a note in here, because under state law, he's allowed to have a rifle even with these prior convictions and he had it in the proper place in the trunk, so -- but under federal law, he's prohibited from having that wherever he has it.  Mr. Sumter also had $682 cash in his right front pocket.

The gun, as Your Honor said, there was a Taurus pistol and a Rossi .38 pistol.  The rifle was a Ruger .223 caliber Mini-14.  It is manufactured in Newport, New Hampshire.  And so therefore, to have been recovered in South Carolina, at some point, it moved in interstate commerce.

As I mentioned, Mr. Sumter has prior convictions which will prohibit him from possessing a firearm and ammunition.  He has a conviction in 2000 for [possession with intent to distribute] cocaine first offense, a 2000 conviction for [possession with intent to distribute] marijuana; and a 2000 conviction for [possession with intent to distribute] . . . cocaine within the proximity of a school.

There ha[ve] been no pardons in his case.  They checked to see.  He has not had his rights restored.  He is prohibited from carrying a firearm.  That will be the extent of the government's case.

ECF No. 94 at 22–24.  Immediately following the Government's factual recitation, the Magistrate

Judge asked Sumter whether he disagreed with anything the Government had told the court, and

Sumter answered: "No, sir."  *Id.* at 24.

Sumter's Presentence Investigation Report ("the PSR") set forth the information necessary

to calculate his sentencing range under the 2001 edition of the United States Sentencing Guidelines

5

("the Guidelines").[2] ECF No. 58-3 at ¶ 21. Based upon such information, the PSR calculated Sumter's total offense level at 23 and his criminal history category at IV, producing a sentencing range under the Guidelines of 70 to 87 months imprisonment. ECF No. 58-3 at ¶¶ 22, 28–32, 41, 69. At Sumter's sentencing hearing on February 10, 2003, the court sustained an objection by Sumter to his total offense level calculation, resulting in a two-level reduction in his total offense level and a Guidelines range of 57 to 71 months imprisonment. ECF Nos. 36 at 1, 58-3 at ¶¶ 23–32. The court ultimately sentenced Sumter within this lower Guidelines range to 64 months imprisonment and 3 years supervised release. ECF Nos. 36, 37. The court entered its judgment on February 13, 2003. ECF No. 37. Sumter did not file a direct appeal.[3]

---

[2] At the time of Sumter's sentencing, the Guidelines were still mandatory as opposed to advisory. *See United States v. Booker*, 543 U.S. 220, 259–60 (2005) (rendering Guidelines advisory rather than mandatory).

[3] The court notes on September 17, 2004, it reduced Sumter's sentence to 46 months imprisonment with all other conditions to remain the same based upon his substantial assistance brought to the court's attention by the Government's motion pursuant to Federal Rule of Criminal Procedure 35(b). ECF Nos. 42, 43. Sumter began his three-year term of supervised release on August 12, 2005. ECF No. 96-1 at 3. On January 28, 2008, Sumter pleaded guilty to conspiracy to possess with intent to distribute and to distribute 50 grams or more of cocaine base (commonly known as "crack" cocaine) and 500 grams or more of cocaine. No. 3:07-cr-00882-CMC, ECF Nos. 12, 49. The court sentenced Sumter to 360 months imprisonment and ten years supervised release on this conviction. *Id.*, ECF No. 64. Sumter's criminal conduct in this regard resulted in the court imposing a two-year term of imprisonment for violation of the terms of his supervised release with respect to his § 922(g)(1)/§ 924(a)(2) conviction, to be served consecutively to his just imposed 360-month sentence. No. 3:02-cr-00499-CMC, ECF Nos. 78, 79. Through various other motions, Sumter's sentence on his conspiracy to traffic drugs conviction has been reduced to 235 months imprisonment with eight years supervised release. No. 3:07-cr-00882-CMC, ECF No. 122. Suffice to say, Sumter's instant § 2255 motion is not moot as Sumter has yet to serve his two years of imprisonment for his violation of the terms of his supervised release with respect to his § 922(g)(1)/§ 924(a)(2) conviction. *Cf. Spencer v. Kemna*, 523 U.S. 1, 7 (1998) ("An incarcerated convict's . . . challenge to the validity of his conviction always satisfies the case-or-controversy Footnote Continued . . .

6

Considering Sumter's young age of twenty-one at the time he pleaded guilty in 2002, he already had a substantial criminal history starting at age seventeen.  ECF No. 58-3 at ¶¶ 36–37. With respect to Sumter's criminal history, the PSR reported he had been convicted of the following three crimes in violation of South Carolina state law and punishable by imprisonment for a term exceeding one year: (1) a March 2, 2000 conviction for possession with intent to distribute cocaine within close proximity of a school or park on December 1, 1999, for which Sumter received an indeterminate sentence of imprisonment not to exceed six years under South Carolina's Youthful Offender Act ("YOA"), S.C. Code Ann. § 24-19-50 (2007),[4] ECF 58-3 at ¶ 37; (2) a March 2, 2000 conviction for possession with intent to distribute marijuana on December 1, 1999, for which he received a concurrent indeterminate sentence not to exceed five years under South Carolina's YOA, ECF No. 58-3 at ¶ 37; and (3) a March 2, 2000 conviction for possession with intent to distribute cocaine on May 3, 1999, for which he received a sentence of five years imprisonment, to be served consecutive to his two YOA sentences imposed on the same date, suspended and for which the court put him on probation for two years with supervision to begin after completion of his other two YOA sentences, ECF No. 58-3 at ¶ 36.  Sumter served more than one year of incarceration with respect to his two offenses committed on December 1, 1999, having been arrested and taken into custody for those offenses on the same day and released on YOA parole on December 15, 2000.  ECF No. 58-3 at ¶ 37.

---

requirement, because the incarceration . . . constitutes a concrete injury, caused by the conviction redressable by invalidation of the conviction.").

[4] The YOA permits South Carolina state courts to cap the maximum penalty for certain offenders at six years in custody.  S.C. Code Ann. § 24-19-50 (2007).

7

On September 23, 2020, Sumter filed the instant *pro se* motion under 28 U.S.C. § 2255. ECF Nos. 85, 85-1. In it, he contends his guilty plea and conviction on Count 1 for being a felon in possession of a firearm in violation of §§ 922(g)(1) and 924(a)(2) is invalid under *Rehaif* because, prior to pleading guilty, the Magistrate Judge failed to inform him of two essential elements of the offense. They are, according to Sumter: (1) at the time he possessed the Ruger, Mini-14, .223 caliber semi-automatic rifle as alleged in the Indictment, he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year; and (2) at the same time, he knew, as a consequence of such conviction, he could not lawfully possess a firearm. ECF Nos. 85-1 at 3, 99 at 4, 7–10. Sumter then relies upon *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020), *rev'd sub nom. Greer v. United States*, 141 S. Ct. 2090 (U.S. June 14, 2021), to argue the failure of the Magistrate Judge to inform him of all elements of his offense prior to his guilty plea constitutes structural error requiring vacatur of his guilty plea and conviction in order he may plead anew. ECF Nos. 85-1 at 3, 99 at 6, 10–11. Sumter forecasts "a strong probability without the prejudice inflicted by the government[, he] would have prevailed at trial." ECF No. 99 at 11.

The Government filed its response on November 19, 2020, seeking dismissal of Sumter's § 2255 motion as untimely and alternatively moving for summary judgment, contending, *inter alia*, Sumter procedurally defaulted his *Rehaif* claim, and he cannot overcome the default. ECF Nos. 96, 96-1. On December 21, 2020, Sumter filed a reply to the Government's response with attachments. ECF Nos. 99, 99-1, 99-2, 99-3.

The court will first address the Government's untimeliness challenge to Sumter's § 2255 motion and then turn to the Government's alternative motion for summary judgment.

**V. The Government's Untimeliness Challenge.**

8

The statutory authorization for a federal prisoner to file a motion attacking his or her sentence is found in 28 U.S.C. § 2255(a), which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  The time period for filing such a motion is found in 28 U.S.C. § 2255(f), which provides a federal prisoner has one year to file a motion for relief from the latest of:

> (1) the date on which the judgment of conviction becomes final;

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2255(f).

The Government contends Sumter's § 2255 motion is untimely under § 2255(f), and the court agrees.  The relevant facts are as follows.  Because Sumter did not file a direct appeal, his conviction became final ten days after entry of judgment when the 10-day notice-of-appeal period

expired.[5] Fed. R. App. P. 4(b)(1)(A)(i) (2003).  *Cf. United States v. Diallo*, 581 Fed. App'x 226, 227 (4th Cir. 2014) (*per curiam*) (citing *Clay v. United States*, 537 U.S. 522, 525 (2003) and Fed. R. App. P. 4(b)(1)(A)(i), (b)(6) for the proposition defendant's non-appealed federal conviction became final when time expired for filing notice of appeal); *cf. Clay*, 537 U.S. at 525 (holding judgment of conviction becomes final when time expires for filing petition for *certiorari* contesting appellate court's affirmance of conviction).  Here, the court entered Sumter's judgment on February 13, 2003, and thus his conviction became final on February 23, 2003.  Fed. R. App. P. 4(b)(1)(A)(i) (2003).  Sumter did not file his § 2255 motion within one year of February 23, 2003, and thus, he cannot show he timely filed his § 2255 motion under § 2255(f)(1).  Sumter also cannot show timely filing under § 2255(f)(2), because there is no allegation, let alone any evidence to suggest, governmental action in violation of the Constitution or laws of the United States prevented him from filing his instant § 2255 motion.  Similarly, Sumter cannot show timely filing under § 2255(f)(4), because Sumter's *Rehaif* claim in his § 2255 motion does not depend upon the discovery of facts supporting such claim.

This state of affairs leaves only § 2255(f)(3) upon which to consider the timeliness of Sumter's § 2255 motion.  To review, § 2255(f)(3) provides a § 2255 motion is timely if it is filed within one year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review . . . ."  28 U.S.C. § 2255(f)(3).  Here, Sumter bases his

---

[5] The court notes Federal Rule of Appellate Procedure 4(b)(1)(A) was amended in 2009, effective December 1, 2009, to provide a 14-day notice-of-appeal period in criminal cases.  Fed. R. App. P. 4(b)(1)(A), advisory committee note to 2009 amendments.

challenge to his guilty plea and conviction upon the Supreme Court's decision in *Rehaif*, which issued June 21, 2019. 139 S. Ct. at 2191. Assuming *arguendo Rehaif* announced a new right made retroactive to cases on collateral review, in the absence of equitable tolling, the latest possible date Sumter could have timely filed a § 2255 motion raising a *Rehaif* claim was June 21, 2020, by delivering it to prison authorities for mailing. *See* 28 U.S.C. § 2255(f)(3); *Houston v. Lack*, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule). This he did not do.

On the basis Sumter did not file the instant § 2255 motion until well over one year after the Supreme Court decided *Rehaif*, the Government urges the court to dismiss the motion as untimely. ECF No. 96-1 at 1, 8–10, 23. In reply, Sumter argues because of the time he spent since March 1, 2020 on modified lockdown with frequent intermittent full lockdowns due to the COVID-19 pandemic, he had no meaningful access to the prison law library or legal assistance, which materially hindered him as a non-lawyer from preparing to file his instant § 2255 motion. *See, e.g.*, ECF No. 99 at 2 (Sumter's Reply to Government's Response) ("With modified lockdown inmates don't have access to normal and quasi-essential activities like . . . law library . . . ."). Sumter submitted three separate documents in support. In the first document, entitled "Declaration of Mr. Sumter," Sumter states in his own hand:

> I being of sound mind declare that since March 2020 FCI McDowell has been on modified lockdown with intermediate full lockdowns frequently. Law library has been limited to a capacity of 6 inmates twice a week. This institution carr[ies] approximately 1000 inmates making difficult to use the law library to research. In addition we have one (1) computer-based law library in each unit without a printer divided among approximately 100 inmates per unit. This makes it almost impossible to gain access to do research.
>
> As layman of the law I'm at a disadvantage and need adequate time and assistance to understand law and its applicability to my issues. Equitable tolling is appropriate here due to extraordinary circumstances that are beyond my control and as well

11

hindered me from filing. I declare that these circumstances did happen and in truth contributed to my delayed filing. Please see attached memo/affidavit substantiating this declaration.

ECF No. 99-2.

The "attached memo" referenced in the last sentence refers to a type-written memorandum dated December 17, 2020, on letterhead of the Federal Correctional Institution, McDowell, where Sumter is incarcerated, from a prison official identified by Sumter as B-Unit Team Counselor Mr. Stock, with the subject line: "Late Administrative Remedy." ECF No. 99-3 at 2. The single-sentence body of the memorandum ("the Prison Memo") states: "Due to being on Covid restrictions from 03/01/2020 until present[,] [i]nmate Noah Sumter . . . was unable to utilize the law library due to the restrictions therefor[e] his administrative was late." *Id.* The memo does not further describe what Mr. Stock means by Sumter's "administrative."

The "attached . . . affidavit" referenced in the last sentence of Sumter's Declaration as quoted above refers to a document, also dated December 17, 2020, entitled "Declaration/Affidavit of Noah Sumter," with the subject line: "Institution Lockdown since March 2020: covid-19." ECF No. 99-3 at 3. The body of the document, again written in Sumter's own hand, states:

Since March 1, 2020 FCI McDowell has been on modified lockdown with indeterminate and frequent full lockdowns. As such opportunities to utilize the law library has either been significantly hindered, limited, or outright unavailable.

To the court, et al; I have acted in good faith with due diligence trying to attend to legal matters. Please give confidence and grace to me legally.

*Id.* at 3. In the third and final paragraph, Sumter directs any questions or concerns to B-Unit Team Counselor Mr. Stock and then includes Mr. Stock's mailing address at the prison and his telephone number. *Id.* at 3. Immediately after Sumter's signature, he states the following and concludes

12

with another signature: "See attached memo in support of this matter. I hereby attest to the foresaid memo signed by Unit Team Counselor Mr. Stock to be accurate. Several attempts were made to get affidavit/memo notarized but was unsuccessful due to lockdown and institution being short of staff." *Id.* at 4. Fairly construing Sumter's written arguments and evidentiary submissions on the timeliness issue, Sumter seeks equitable tolling of § 2255(f)'s one-year statute of limitations for 206 days from March 1, 2020 through September 22, 2020, on the basis he lacks legal understanding and, during such time, he had no meaningful access to a law library or legal advice.

The court agrees with the Government Sumter's § 2255 motion is untimely under § 2255(f)(3). "[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). Thus, equitable tolling is "reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Id.* Accordingly, "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010) (on petition for federal habeas relief by state prisoner)). *See also Whiteside v. United States*, 775 F.3d 180, 184–86 (4th Cir. 2014) (*en banc*) (applying *Holland* test for equitable tolling in considering timeliness of a § 2255 motion). The analysis of these two elements in a given case is necessarily fact dependent. Here, Sumter has established neither element.

13

The one-year clock on Sumter's *Rehaif* claim started ticking on June 21, 2019, and although Sumter bears the burden to demonstrate his own diligence in pursuing his *Rehaif* claim, *Holland*, 560 U.S. at 649, Sumter failed to present any evidence he took even a single step within his control to diligently pursue filing a *Rehaif* claim during the more than eight months between June 21, 2019 and March 1, 2020, when he was not on any type of lockdown due to the COVID-19 pandemic.  The court notes the Fourth Circuit has not directly addressed whether the seeker of equitable tolling must show diligence in pursuing his rights during the entire time of the applicable limitations period or only during the time sought to be equitably tolled.  Nonetheless, under the weight of authority and the well-established equitable principle that "[e]quity always refuses to interfere where there has been gross laches in the prosecution of rights," *McQuiddy v. Ware,* 87 U.S. 14, 19 (1873), the court holds Sumter's failure to take absolutely no steps within his control in the prosecution of his right to file a *Rehaif* claim in a § 2255 motion for just shy of two-thirds of the one-year statute of limitations period guts his claim to the rare remedy of equitable tolling. *See Donald v. Pruitt*, No. 20-1435, 2021 WL 1526421, at *4 (10th Cir. April 19, 2021) (unpublished) (*pro se* prisoner's failure to explain why he was not diligent in pursuing habeas claim for nine months prior to COVID-19 restrictions limiting access to law library and legal assistance fatal to his claim for equitable tolling); *Smith v. Davis*, 953 F.3d 582, 598–99 (9th Cir. 2020) (*en banc*) (for a litigant to demonstrate he has been pursuing his rights diligently, and thus to satisfy first element required for equitable tolling, he must show reasonably diligent pursuit of his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court); *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016) ("[T]o qualify for equitable tolling, [petitioner] had to

14

demonstrate that he was reasonably diligent in pursuing his rights throughout the limitations period and until he finally filed his untimely habeas petition."); *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005) (stating obligation to act diligently "does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well," and noting that 21 months elapsed before the circumstances that purportedly created the extraordinary circumstance arose); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) (petitioner did not exercise reasonable diligence because, in addition to the absence of specific references to his efforts to pursue his federal habeas petition, he did nothing to pursue such a petition in the more than one year before the extraordinary circumstance being argued as the cause of equitable tolling was created); *but see Harper v. Ercole*, 648 F.3d 132, 136–37 (2d Cir. 2011) (adopting a pure stop-clock approach under which, "a petitioner needs to show diligence only during the period he seeks to have tolled—i.e., the period during which the extraordinary circumstances prevented timely filing"). *Cf. Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005) (refusing to apply equitable tolling where "petitioner s[a]t on his rights for years *before* he filed his [state habeas] petition" and "sat on them for five more months after" the denial of state habeas relief became final); *Akins v. United States*, 204 F.3d 1086, 1090 (11th Cir. 2000) (prisoner's failure to explain his inability to file § 2255 motion during seven months prior to his lockdown, when his claim was ripe and he had access to law library and legal assistance, fatal to his claim alleging lockdown was an unconstitutional impediment causing denial of his access to the courts).

15

Next, assuming *arguendo* Sumter meets the diligent-pursuit prong of an equitable tolling claim, he cannot meet the causation prong.  First, the law is well settled that, even for *pro se* prisoners, ignorance of the law is not an extraordinary circumstance for purposes of equitable tolling.  *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (even for *pro se* prisoners, ignorance of the law is not an extraordinary circumstance for purposes of equitable tolling); *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015 (8th Cir. 2003) (*pro se* prisoner's lack of legal knowledge not extraordinary circumstance for purposes of equitable tolling).  Second, a prisoner has no constitutional right to counsel in federal habeas proceedings, *Rouse v. Lee*, 339 F.3d 238, 251 (4th Cir. 2003) (*en banc*), and thus, his lack of representation during the applicable statutory filing period does not merit equitable tolling of such period, *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999).  Third, Sumter does not claim he lacked the ability to contact the court by writing and mailing letters during his time in modified or full lockdown.  *See Muhammad v. United States*, 735 F.3d 812, 815 (8th Cir. 2013) (holding *pro se* prisoner's confinement in Special Housing Unit preventing him from access to the prison's law library or his legal papers for five out of twelve months during statute of limitations period did not constitute extraordinary circumstances warranting equitable tolling because he acknowledged he was able to send letters during the confinement, suggesting he had access to paper and writing implements, and he did not claim he was prohibited from contacting the court or was denied mail from the court).  Finally, and perhaps most significantly, Sumter does not explain what circumstances changed between March 1, 2020 and September 23, 2020, that all of a sudden allowed him to file his § 2255 motion on September 23, 2020.  Considering the three documents submitted by Sumter in support of his claim for equitable tolling (*i.e.*, the <u>Declaration of Mr. Sumter</u>, the Prison Memo, and the

16

Declaration/Affidavit of Noah Sumter) along with his assertion in his Reply that even on modified lockdown inmates don't have access to the law library, the answer is certainly not that he regained access to the law library in any meaningful way.  Neither does Sumter offer any evidence he regained access to legal assistance during this time period.  With absolutely no explanation from Sumter on the matter, the only reasonable conclusion to be drawn is Sumter's lack of meaningful access to the law library and/or legal assistance between March 1, 2020 and September 23, 2020, did not stand in his way of filing a timely motion.  Under all of these circumstances, Sumter has not carried his burden of establishing the required causation prong of a claim for equitable tolling.

Summarizing, although Sumter had nearly a two-thirds majority of the limitations period to work on his § 2255 motion raising a *Rehaif* claim under normal circumstances, he took zero steps to do so during this time; and, when he finally did file his motion approximately three months after the limitations period expired, he did so without having any meaningful access to the prison law library or legal assistance, and he offers no explanation regarding what circumstances previously beyond his control changed to allow his actual filing.  For all of these reasons, the court holds Sumter has wholly failed to establish (1) he had been pursuing his right to file a § 2255 motion raising a *Rehaif* claim diligently, and (2) extraordinary circumstances stood in his way and prevented him from timely filing such a motion.  Accordingly, Sumter has not demonstrated extraordinary circumstances warranting his entitlement to the rare remedy of equitable tolling, and the court dismisses Sumter's § 2255 motion as untimely and with prejudice.

## VI. Government's Alternative Motion for Summary Judgment.

Given the untimeliness of Sumter's § 2255 motion resulting in its dismissal, the court's analysis could end now.  However, for the sake of thoroughness, the court will proceed to address

the Government's motion for summary judgment on Sumter's § 2255 motion.  The Government moves for summary judgment in its favor on the following grounds: (1) Sumter procedurally defaulted his *Rehaif* claim by failing to raise it on direct review; (2) Sumter cannot demonstrate cause and prejudice to excuse his default; (3) Sumter cannot demonstrate his actual innocence to excuse his default, and (4) assuming *arguendo* Sumter can overcome his procedural default, the *Rehaif* error in his case is harmless.  ECF No. 96-1 at 8–21.

Assuming *arguendo* Sumter's § 2255 motion is timely and *Rehaif* provides a new substantive rule retroactive to cases on collateral review because it narrowed the class of persons the law punishes, *see Schriro v. Summerlin*, 542 U.S. 348, 351–53 (2004) (new substantive rule which "alters the range of conduct or the class of persons that the law punishes," falls outside general bar on retroactivity), Sumter still would be entitled to no relief on his motion.  Sumter has procedurally defaulted his *Rehaif* claim, and he cannot demonstrate either cause and prejudice or his actual innocence in order to excuse his procedural default.

Before launching into the court's procedural default analysis, the court must address Sumter's misunderstanding of the scope of a defendant's knowledge in a felon-in-possession case as required by *Rehaif*.  Contrary to Sumter's reading of *Rehaif*, "the scope of a defendant's knowledge as required by *Rehaif* does not extend beyond the defendant's status under §§ 922(g) and 924(a)(2), and thus does not require the Government to prove he also knew such status put him in a category of persons legally prohibited from possessing a firearm or ammunition." *United States v. Jackson*, No. 3:17-cr-810-CMC, 2021 WL 694848, at *9 (D.S.C. Feb. 23, 2021).  *See also Greer v. United States*, 141 S. Ct. 2090, 2095 (2021) (describing missing *Rehaif* element in a felon-in-possession case as requiring that defendant "*knew he was a felon* when he possessed the

18

firearm"). Thus, from now on, when the court refers to *Rehaif* error in Sumter's case, the court is referring to the Magistrate Judge's failure to inform Sumter at his guilty plea hearing that in order to convict him on Count 1, the Government would be required to prove as an element of the offense that at the time he possessed the Ruger, Mini-14, .223 caliber semi-automatic rifle as alleged in the Indictment, he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year.

The court agrees with the Government under binding Supreme Court precedent Sumter procedurally defaulted his *Rehaif* claim on collateral review by failing to challenge on direct review the constitutional validity of his guilty plea and conviction on Count 1 on the basis the Magistrate Judge misinformed him about the elements of the offense. *See Bousley v. United States*, 523 U.S. 614, 621–22 (1998) (holding defendant who failed to challenge on direct review constitutional validity of guilty plea to federal offense on basis court misinformed him about elements of the offense procedurally defaulted the claim on collateral review). Thus, Sumter may raise his *Rehaif* claim on collateral review in a § 2255 motion only if he can first demonstrate either cause for the procedural default and resulting actual prejudice or that a miscarriage of justice would result if the court refused to entertain his collateral attack. *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999) ("In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack."). To demonstrate a miscarriage of justice, Sumter must show he is actually

innocent of violating §§ 922(g)(1) and 924(a)(2), as alleged in Count 1, by clear and convincing evidence. *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Mikalajunas*, 186 F.3d at 493.

Having concluded Sumter procedurally defaulted his *Rehaif* claim on collateral review, the court next considers whether Sumter can demonstrate cause for failing to raise such a claim on direct review. The existence of cause ordinarily requires the habeas petitioner to show some objective external impediment prevented his counsel's efforts to construct or raise the claim on direct review, *Murray*, 477 U.S. at 492, such as when a claim is so novel its legal basis was not reasonably available to counsel on direct review, *Reed v. Ross*, 468 U.S. 1, 17 (1984). Sumter contends he demonstrates cause because the dramatic change in the law effected by *Rehaif* regarding the elements the Government must prove to sustain a conviction under §§ 922(g) and 924(a)(2) created a claim so novel its legal basis was not reasonably available to his counsel at the time for his direct appeal. This court has repeatedly rejected this exact argument. *See, e.g.*, *Jackson*, No. 3:17-cr-00810-CMC, 2021 WL 694848, at *10 (rejecting § 2255 movant's argument novelty of raising *Rehaif*-type claim pre-*Rehaif* demonstrates cause for failure to raise *Rehaif*-type claim on direct review); *United States v. Asmer*, No. 3:16-cr-00423-CMC, 2020 WL 6827829, at *5–7 (D.S.C. Nov. 20, 2020), *appeal filed*, No. 21-6064 (4th Cir. Jan. 11, 2021) (same). Numerous other courts have done so as well. *See, e.g.*, *Clay v. United States*, 833 F. App'x 663 (8th Cir. 2021) (in context of § 2255 motion, holding defendant could not demonstrate cause for failure to raise *Rehaif*-type claim on direct review); *United States v. Duell*, Cr. No. 15-87, 2021 WL 858445, at *4 (W.D. Penn. Mar. 8, 2021) (same); *Bradford v. United States*, Civ. No. 3:20-cv-00526, 2021 WL 561369, at *3 (M.D. Tenn. Feb. 16, 2021) (same), *appeal filed*, No. 21-5182 (6th Cir. Mar. 1, 2021); *Cross v. United States*, 504 F. Supp. 3d 955, 964–65 (N.D. Iowa Dec. 2, 2020) (same);

*Wilson v. United States*, Civ. No. 3:19-cv-280-RJC, 2020 WL 4950930, at *8 (W.D.N.C. Aug. 24, 2020) (same), *appeal dismissed*, No. 20-7436, 2020 WL 9148121 (4th Cir. Nov. 30, 2020). Sumter offers nothing new to change the court's mind in this regard. Accordingly, for the reasons most thoroughly set forth in *Asmer,* No. 3:16-cr-00423-CMC, 2020 WL 6827829, at *5–7, the court holds Sumter has not demonstrated cause to excuse his failure to raise a *Rehaif*-type claim on direct review.

Because Sumter failed to demonstrate cause, he cannot avoid the procedural bar to the court considering his *Rehaif* claim on the merits in the instant § 2255 motion under a cause-and-prejudice analysis. Accordingly, the court need not analyze the prejudice prong of the cause-and-prejudice analysis. However, for the sake of thoroughness, the court considers whether, assuming *arguendo* Sumter demonstrated cause, he can demonstrate prejudice, which requires a showing of actual prejudice. *United States v. Frady*, 456 U.S. 152, 167-68 (1982). To show actual prejudice on collateral review, a defendant must "demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" *Satcher v. Pruett*, 126 F.3d 561, 572 (4th Cir. 1997) (quoting *Murray*, 477 U.S. at 494). This is so despite the Fourth Circuit's now defunct holding in *Gary* that *Rehaif* "error is structural, which *per se* affects a defendant's substantial rights." *Gary*, 954 F.3d at 200. In *Greer*, the Supreme Court reversed *Gary* and made clear "a *Rehaif* error in a plea colloquy is . . . not structural," as it "fit[s] comfortably within the 'general rule' that 'a constitutional error does not automatically require reversal of a conviction.'" 141 S. Ct. 2100 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991)).

Therefore, to show actual prejudice on collateral review, Sumter bears the burden of demonstrating the *Rehaif* "error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" *Satcher*, 126 F.3d at 572 (quoting *Murray*, 477 U.S. at 494). This means Sumter must show the Magistrate Judge's *Rehaif* error at his guilty plea hearing prejudiced him by denying him an entire judicial proceeding to which he had a right. *Cf. Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (on § 2255 motion, "when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial'") (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004) (when raising a forfeited attack on guilty plea on direct review under plain error standard, defendant can only demonstrate Rule 11 error affected his substantial rights by "show[ing] a reasonable probability that, but for the error [at his plea hearing], he would not have entered the plea").

Here, Sumter has failed to carry his burden of demonstrating *Rehaif* error at his guilty plea hearing caused the denial of an entire judicial proceeding to which he had a right. First, he makes no attempt to demonstrate the *Rehaif* error worked to his actual and substantial disadvantage. Second, he does not deny at the time he possessed the Ruger, Mini-14, .223 caliber semi-automatic rifle, as alleged in the Indictment, he knew he had been convicted of at least one crime punishable by a term of imprisonment exceeding one year. Third, he makes no assertion to the effect he would not have pleaded guilty and would have insisted on going to trial had the Magistrate Judge informed him at his guilty plea hearing of the missing *Rehaif* element.

Under this state of affairs, the conclusion is foregone Sumter has failed to meet his burden of demonstrating actual prejudice on collateral review. Such failure is not surprising given "demonstrating prejudice under *Rehaif* 'will be difficult for most convicted felons for one simple reason: Convicted felons typically know they're conviction felons.'" *Greer*, 141 U.S. at 2098 (quoting *United States v. Lavalais*, 960 F.3d 180, 184 (5th Cir. 2020)). As the Supreme Court recently observed in *Greer* in the materially analogous situation of determining whether a defendant asserting *Rehaif* error could satisfy the substantial-rights prong of the plain-error test:

> In a felon-in-possession case where the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb in trying to satisfy the substantial-rights prong of the plain-error test based on an argument that he did not know he was a felon. The reason is simple: If a person is a felon, he ordinarily knows he is a felon. "Felony status is simply not the kind of thing that one forgets." [*United States v. Gary*,] 963 F.3d 420, 423 (CA4 2020) (Wilkinson, J., concurring in denial of reh'g *en banc*). The simple truth is not lost upon juries. Thus, absent a reason to conclude otherwise, a jury will usually find that a defendant *knew* he was a felon based on the fact that he *was* a felon. A defendant considering whether to plead guilty would recognize as much and would likely factor that reality into the decision to plead guilty. In short, if a defendant was in fact a felon, it will be difficult for him to carry the burden on plain-error review of showing a 'reasonable probability' that, but for the *Rehaif* error, the outcome of the district court proceedings would have been different.

*Greer*, 141 S. Ct. at 2097.

All of this has played out in Sumter's case, evincing his uphill climb to establish he has suffered actual prejudice as the result of the *Rehaif* error in his case. Sumter admitted in the factual basis for his guilty plea that, as of February 10, 2002, he had been convicted of three crimes punishable by a term of imprisonment exceeding one year for which he had never been pardoned. ECF No. 94 at 21–24. For two of these convictions, Sumter received an indeterminate sentence of imprisonment not to exceed five years and for another an indeterminate sentence of

23

imprisonment not to exceed 6 years.  *Id.*  And, for two of these convictions, Sumter concurrently served more than one year of incarceration.  *Id.* at ¶ 37.

Although the court could correctly end its actual prejudice analysis here, the court notes the undisputed evidence in the habeas record powerfully illustrates the lack of actual prejudice flowing from the *Rehaif* error in Sumter's case, for it ably demonstrates: (1) the Government could have presented a strong case at trial against Sumter on the missing *Rehaif* element for which he had no viable defense; and (2) pleading guilty offered Sumter a better outcome than he most assuredly would have achieved had he gone to trial.  The Government's obligation to prove a defendant's knowledge of his felony status is not burdensome, as "knowledge can be inferred from circumstantial evidence."  *Rehaif*, 139 S. Ct. at 2198 (quoting *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)).  The Government most assuredly would have put before the jury undisputed evidence regarding Sumter's three convictions in 2000 for South Carolina drug trafficking offenses with their indeterminate sentences of five and six years respectively.  ECF No. 58-3 at ¶¶ 36–37.  Moreover, the jury would have learned for two of these convictions, Sumter concurrently served more than one year of incarceration.  *Id.* at ¶ 37.  Had the Government put this evidence before a jury on the missing *Rehaif* element, for which Sumter had no viable defense, the jury in all reasonable likelihood would have found, on or about February 10, 2002, Sumter knew he had been previously convicted of at least one crime punishable by a term of imprisonment exceeding one year.  *See Greer*, 141 S. Ct. at 2097–98 (defendants' prior multiply felony convictions constituted "substantial evidence that they knew they were felons" at time they possessed firearms as alleged in federal indictments for felon-in-possession offenses).  Moreover, not to be overlooked in the actual prejudice analysis is the fact, if convicted on Count 1 following a jury trial, Sumter would

24

have lost his three-level decrease in his total offense level for acceptance of responsibility by pleading guilty, thus increasing his sentencing range under the Guidelines from 51 to 71-months imprisonment to 77 to 96-months imprisonment.  USSG Ch. 5, Pt. A (Sentencing Table) (2001). Given the court sentenced Sumter in the upper middle of his Guidelines range, if convicted on Count 1 at trial, Sumter likely would have received a sentence in the neighborhood of 24 months longer than he received by pleading guilty to Count 1.  Two years spent in incarceration is a substantial bite out of anyone's life, and the court is certain, in the absence of *Rehaif* error, Sumter would have chosen to lop that time off his sentence by pleading guilty in the face of how easily the Government could have proven the missing *Rehaif* element.

To summarize, when the overwhelming strength of the case the Government could have presented at trial on the missing *Rehaif* element is considered with the benefit of the bargain Sumter would have lost had he not pleaded guilty, the likelihood Sumter would have chosen to roll the dice at trial on Count 1 had he known about the missing *Rehaif* element prior to his guilty plea is nil.  Most importantly, Sumter himself has not asserted he would have made this choice.[6]  Thus, Sumter has not demonstrated the *Rehaif* error worked to his actual and substantial disadvantage.

The court now considers whether Sumter has demonstrated his actual innocence of Count 1.  Sumter does not allege, let alone offer any evidence, demonstrating he did not know he had

---

[6] This case is easily distinguished from *Lee*, where the defendant satisfied the prejudice prong on his ineffective assistance of counsel claim in a § 2255 motion because, although he had no real defense to the charge of possessing ecstasy with intent to distribute and would have received a lesser prison sentence by accepting a plea rather than going to trial, he had "adequately demonstrated the reasonable probability that he would have rejected the plea had he known that it would lead to mandatory deportation."  *Lee*, 137 S. Ct. at 1967.

been convicted of a crime punishable by a term of imprisonment exceeding one year at the time

he possessed the firearm as alleged in Count 1. Rather, Sumter's actual innocence claim rests upon

his mistaken belief the scope of a defendant's knowledge as required by *Rehaif* extends beyond

the defendant's status under §§ 922(g) and 924(a)(2), to include proof he also knew such status

put him in a category of persons legally prohibited from possessing a firearm. As this court already

explained earlier in this Opinion and Order, Sumter could not be more wrong on this score. *See*

*supra* p. 18–19. With Sumter's actual innocence claim resting solely on a false premise, it

collapses of its own weight. Moreover, the court notes, as previously explained, the record

forecloses any plausible argument Sumter did not know he was a felon at the time he possessed

the firearm as alleged in Count 1. *See supra* pp. 22–25. For these reasons, Sumter has failed to

carry his burden of demonstrating he is actually innocent of Count 1 by clear and convincing

evidence, and therefore, his procedural default remains unexcused.

Accordingly, assuming *arguendo* Sumter timely filed his § 2255 motion, the court grants

the Government's motion for summary judgment in full and dismisses Sumter's § 2255 motion

with prejudice.

## VII. Conclusion.

Because Sumter did not file his § 2255 motion, ECF No. 85, within the one-year period of

limitation provided in § 2255(f) and sufficient grounds do not exist for equitable tolling, the court

dismisses the motion as untimely and with prejudice. Alternatively, assuming *arguendo* Sumter

timely filed his § 2255 motion, because Sumter procedurally defaulted his *Rehaif* claim without

establishing cause and prejudice or his actual innocence to excuse the default, the court grants the

Government's motion for summary judgment in full and dismisses Sumter's § 2255 motion with prejudice.

### CERTIFICATE OF APPEALABILITY

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee,* 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **denied**.

**IT IS SO ORDERED.**

<u>s/Cameron McGowan Currie</u>
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
July 27, 2021